## Pinto *v.* Atwater.

### In the Court below,

TIMOTHY ATWATER, EBENEZER PECK, JOHN MILES, 3d, STEPHEN ALLING, and DANIEL TRUMAN, *Plaintiffs*; WILLIAM PINTO, *Defendant.*

THIS was an action of book debt.

The general issue being pleaded, and closed to the jury, a special verdict was found, containing the following facts: The plaintiffs being joint owners of the brig *James*, lying in the port of New-Haven, ready for sea, and bound for the Island of Trinidad, the defendant, on the 26th of November, 1799, applied to them for passage for himself and family, and for freight of two horses and one barrel of apples, from New-Haven to Trinidad. The plaintiffs agreed to take the passengers and freight, and transport them accordingly. The defendant for the passage of himself and family agreed to pay $ 100, for the freight of the horses $ 70 each, and for the freight of the apples $ 3. The plaintiffs, at the request of the defendant, furnished the layings-in for the horses, of the value of $ 20, which the defendant, by the usage in such cases, was to pay to the plaintiffs. The passengers and freight being taken on board, the brig immediately proceeded on her voyage, in the direct course from New-Haven to Trinidad. On the 18th day after her departure, and being within 48 hours sail of Trinidad, having performed nine tenth parts of her voyage, she was, without any fault on the part of the master, mate, mariners, or owners, captured by a French privateer, and after the master, mate and crew were forcibly taken out, and a prize master and crew put on board, she was ordered for Gua-

B b

*Where property is transported on freight, which is captured on the voyage, and afterwards recaptured, and restored upon payment of salvage, freight is to be paid in proportion to the voyage performed, and the property saved, after deducting the salvage.*

1804.

PINTO
*v.*
ATWATER.

daloupe, then subject to the French Republic. Three days after capture, she was retaken off Guadaloupe, by an English sloop of war, and on the 3d day after recapture, carried into Martinico, then in the possession, and under the government, of the Kingdom of Great-Britain. She was there holden, by the recaptors, as a lawful prize, subject, however, to be ransomed, on the payment of salvage. On her being libelled, by the recaptors, in the Court of Admiralty, for Martinico, the defendant applied to the agent of the recaptors, and made a compromise with him for the salvage due on account of said horses and apples, amounting to one third of their value. This sum the defendant paid to the agent, and received the horses and apples in good order, without making any objection. The horses he immediately sold for $ 210 per head, which was a good price for the same, before the plaintiffs had a reasonable time to proceed on the voyage to Trinidad. For the salvage, which the defendant paid, the insurers, who had insured the horses, paid him $ 98. The plaintiffs filed a claim in the Court of Admiralty to have the brig and the residue of the cargo restored to them, upon payment of salvage; and thereupon such proceedings were had, that the vessel and cargo were sold for the benefit of the recaptors and claimants. One third part of the proceeds thereof was paid to the former for salvage, and the residue to the latter. The master and officers of the brig, who had been taken out by the French, arrived at Martinico, within 21 days from the time of the capture, and while the defendant was there, but not until 14 days after the arrival of the brig. The defendant, however, did not request the master, or any other person for the plaintiffs, to proceed with him and his family to Trinidad. The necessary expences of the defendant, for himself and family, during his detention in Martinico,

amounted to $ 148. On the 22d day after the arrival of the brig in Martinico, the defendant procured for himself and family a passage to Trinidad, on board an English armed schooner, for which passage he contracted to pay $ 100. This schooner was, on the passage, captured by a French privateer, and, with the defendant and his family, carried into the Island of Margaretta. The captain, on the capture of his vessel, relinquished all claim upon the defendant for passage money. From Margaretta, the defendant, at the expence of $ 40, procured himself and family to be transported to Trinidad, where they arrived in 41 days after said brig arrived at Martinico. The usual passage from New-Haven to Trinidad is performed in 20 days. The trade winds generally prevail between the latitudes of Martinico and Trinidad, and from that cause passages are rendered difficult from the former Island to the latter, being performed sometimes in 4, and sometimes in not less than 28 days.

This action was brought to recover $ 100 for the passage of the defendant and his family ; $ 140 for the freight, and $ 20 for the layings-in, of the horses ; and $ 3 for the freight of the apples ; all which were exhibited in the plaintiffs' account on trial.

Upon these facts, the Superior Court adjudged, that the plaintiffs were entitled to recover the sum of $ 20 for the layings-in, and such part of the sum of $ 140 for the freight of the horses as is in proportion to that part of the voyage performed before the capture, *i. e.* nine tenths of the whole ; but that the plaintiffs were not entitled to recover any part of said sum of $ 100 for the passage of the defendant, and his family, nor any part of said sum of $ 3 for the freight of said barrel of apples.

1804.

PINTO
v.
ATWATER.

The defendant brought a writ of error, stating that the plaintiffs were entitled to recover only the sum of $20 for the layings-in.

*Edwards*, (of New-Haven) for the plaintiff in error, admitted that *Pinto* must pay for the layings-in, but contended, that, under the circumstances,—after a capture, recapture, and condemnation,—nothing else could be recovered.

The Superior Court decided, that the plaintiffs below could recover nothing for the passage of the family, or for freight of the apples, but might recover nine tenths of the freight for the horses, as nine parts out of ten of the voyage were found to be performed.

But, it is contended, that they cannot recover any part.

This action of book debt is founded upon a *precise* contract, which is precisely found by the jury, upon application by *Pinto*, to transport his family and property to Trinidad, for a specific price.

The object was to get to Trinidad ;—no other place was in view.

The jury have also found what the book account is. The claim is founded on the contract. Can they, then, recover upon the ground of a special contract, which has never been fulfilled by them ?

In all cases, where the plaintiff claims a sum of money, when a prior act of his is the consideration upon which payment is to be made, he must show performance upon his part ; nor is it sufficient for him to show, that he was

hindered by the act of God; or that he did all he could do. Thus, if a ship sails from New-Haven, and arrives within an hour's sail of good mooring, and then upsets, and the cargo is lost, without any fault, freight never can be recovered by the owner.—This will be recognized by all, in case of a charter-party. (a)

It may be said, that the action, in the case cited, is founded upon a covenant ; but that can make no difference. The only question is, whether the party claiming from the contract, has complied with the conditions of it. Lord KENYON, in the case of *Cook* v. *Jennings*, (b) intimates, that there is no difference whether the contract is by deed, or otherwise, if the terms of it are precisely defined.

The doctrine contended for, by the plaintiff in error, is founded upon good sense, and supported by authorities. (c) One agrees to transport goods to New-York, and fails to do it ; he can, therefore, have no claim for doing it.

But it has been contended, and adjudged, that the plaintiff may recover a part of the freight proportional.

*Molloy*, who is a great authority in mercantile questions, says, (d) " freight is due for so much as the ship has earned." Lord MANSFIELD, in the case of *Luke* v. *Lyde*, (e) agrees that freight is due only *pro ratâ itineris*, though he erred in the application of the rule.

If the Court are of opinion, that the action of book

(a) 1 *Brownlow* 21, *Bright* v. *Cowper.*
(b) 7 *Term Rep.* 381.            (c) 1 *Bulst.* 127.
(d) *Molloy* 371.                 (e) 2 *Burr.* 882.

1804.

PINTO
v.
ATWATER.

debt is an equitable action, and under a precise contract, an apportionment can be made; yet we deny, that any part of the freight is due.

At the time this vessel sailed, we were at war with France. She was taken by the French; was in their possession three days; was recaptured by an English vessel; was condemned, and sold. Was not, then, the voyage entirely lost, and at an end, as it respects the owners? Could they not have then abandoned to the underwriters? Was not the property then in the English?

Suppose *Pinto*, instead of ransoming the horses, (which implies that they might be lawfully holden) had not done it; could he ever have been called upon for freight? If the vessel had been utterly lost at sea, he could not have had a better right to abandon, than he now had. (*f*) As to *Pinto*, the law considered it as a total loss, and he could recover against the underwriters.

It is absurd to say, that he should be called upon to pay *pro ratâ*, if the goods are ransomed, and if they are not ransomed, that he is not liable.

Suppose a vessel upsets, and the owners, hearing of it, abandon; she afterwards rights, and is brought home, and delivered to the underwriters; could the owners of the vessel call upon the owner of the goods to pay *pro ratâ itineris?*

But is that rule, as applied by the Court, to be justified at all?—As the ship had performed nine tenths of the voyage; therefore, you shall pay at the rate of nine

(*f*) 2 *Burr.* 683, *Goss* v. *Withers*

tenths ; and this is supposed to be supported by the case of *Luke* v. *Lyde.* In that case, Lord MANSFIELD thinks it reasonable, that the part lost should be considered. But here, the Court have not allowed that part, which was lost. That case, therefore, does not support this decision.

When a general rule is not correctly applied, we may reject the application and resort to the rule ; otherwise, we surrender our reason to the judgments of Westminster-Hall.

All agree, that a recovery must be founded upon the justice and equity of the case. Look, then, at the facts in that case, and see, whether there is any justice or equity in the application of this principle. Suppose that a vessel having taken from New-Haven freight to Trinidad, has got into the chops of the harbour, and is then blown into Spain ; the goods are safe, but the ship injured, and the master gives up the goods, and will not carry them further ; the owner receives them, at more than twice the distance from their port of destination, that they were at, when he delivered them ; the goods there are of no value, and are sent back to New-Haven ; according to the decision, he must pay ninety-nine hundredths of the freight. Is there any equity in this ? Has any good been done to the freighter ? You were injured by the weather :—but had the vessel sunk, you would have had the same argument.

The application of the general rule in *Lutwidge* v. *Grey,* (*g*) is correct. You shall be paid according to what you have earned, *i. e.* according to what you have

(*g*) *Abbot on Shipping* 240. *Lond. Edit.* 1802.

done for the benefit of the freighter. If, therefore, a vessel sails from Newfoundland to New-York with grindstones, and, after reaching Sandy Hook, is driven back to St. Johns, and the cargo is to be sold at the same place from whence it started ; as no good has been done the owner, he cannot, upon principle, be liable.

But, it will be contended, that the plaintiffs below had not a reasonable time to carry the goods to Trinidad. But that is a question of law arising upon the facts stated in the special verdict. If the captain had offered to carry them to Trinidad, *Pinto* could have said, " the property is libelled, I have not the possession of it." But it appears, that the captain was not at Martinico, under seventeen days after the vessel.

It may be said, the property was insured. But if it had been entirely lost, the owners of the vessel could derive no benefit from the insurance.

It may be asked, had the vessel been carried into Trinidad, could not a recovery have been had? No ; because a loss happened before it arrived there.

*Smith*, (of New-Haven) and *Denison*, for the defendants in error.

The claim of the defendants in error is, that upon the facts found they are entitled to freight on the horses, *pro ratâ itineris ;* and to $ 20 for stores furnished for the horses. It is conceded by the plaintiff in error, that we must recover the $ 20.

It will be noticed, that the action is not brought upon any *special agreement* between the parties. It is an ac-

tion of *book debt*, wherein we claim a *quantum meruit* for the freight of the horses. This circumstance, it is conceived, becomes material, from the consideration, that if we ground our claim upon a special covenant, it becomes essential to prove a fulfilment, on our part.

The objections, which are made to the payment of freight, will be found to be comprehended in this general one, that the horses have not been transported to Trinidad, as was agreed, at the time when they were received on board, in New-Haven. Although it was agreed, that the horses should be transported to Trinidad; yet there was no condition expressed in this agreement, that *Pinto* should not be holden for a rateable freight, if the property should be delivered at any other port. If there be no specific agreement to controul the operation of law, the general rule is, that freight must be paid wherever the goods are *delivered and accepted*, be that where it may. (*h*) It is always, however, at any port, other than the port of destination, at the option of the *master* whether he will *deliver*, and at the option of the *merchant* whether he will *accept*. If there be no faults in the master, mariners, or owners of the vessel, and the property be not abandoned, but accepted by the freighter, freight must be paid, either *in toto*, or *pro ratâ*. (*i*) Shipwreck, or capture, does not dissolve the contract between the parties, if all, or any part of the goods be saved. In such a case, the master of the vessel has his election, whether to procure another vessel, and proceed on the voyage, and deliver the property at the port of destination, and obtain *whole freight*, or to leave the property at the disposal of the freighter : and the freighter has his election,

(*h*) *Abbott on Shipping* 243, 4.
(*i*) See *Abbott on Shipping* from 234 to 243, and *Luke v. Lyde*, *Burr* 889.

PINTO
v.
ATWATER.

1804.

C c

whether to accept the property, and pay a rateable freight, or to abandon it to the owner or master of the vessel. The *acceptance* of the property virtually amounts to an engagement to pay ; the abandonment of it amounts to a refusal. The better opinion doubtless is, that in case of the arrival of property at the original port of destination, the freighter has no right to abandon. But, in case of shipwreck, or capture, before arrival, he doubtless has a right to abandon, in lieu of the payment of freight. Under such circumstances, the shipper has his election to make. If he accepts the property, he must pay a rateable freight ; if he abandons, the master, or owner must take the goods as payment for the freight. By this rule, it will be readily seen, that in case of shipwreck or capture, the owner of property can never be compelled both to lose his goods, and to pay the freight. In the special verdict it is found, that *Pinto* took possession of the horses without making any objection, and without demanding, that they should be carried to Trinidad, and sold them for $ 210 a head.

Having thus accepted the property, and appropriated it to his own use, he waived the right of abandoning, and took upon himself the payment of freight, in lieu of charging it solely upon the horses.

The goods can always be holden as a pledge for the payment of freight ; and the master may legally refuse to deliver them up, until freight be paid. If the property be taken from the master of the vessel, by the shipper, the lien for freight upon the goods is lost, and the responsibility for payment thereof transferred to the person, who receives the property. For, it certainly would be a very singular doctrine, that we may retain the property of the shipper, until freight be paid ; and

yet have no right of action against him, when he has taken the property out of our custody.

Further, it is found in the special verdict, that *Pinto* sold the horses before the master of the vessel had a reasonable time to proceed on the voyage to Trinidad. It will not be denied, that if, after capture, or shipwreck, or any accident, whereby the goods are carried to a port other than the port of destination, the master should *offer* to transport the goods to the port of destination, he will be entitled to whole freight, whether his offer be accepted or not. (*k*) Now, a reasonable time ought to be allowed the master to make this *offer*. If it be necessary to repair, or procure another vessel, in consequence of the disability of his own, some time must necessarily be allowed to perform this business. But *Pinto*, by not waiting *a reasonable time* before he sold the horses, has completely put it out of our power to have transported them to Trinidad, if we had been disposed so to have done. Shall *Pinto*, by this act of his own, in which we were not consulted, bar us of the claim, which we should otherwise have had against him, for the payment of freight? Upon this principle, in order to avoid the payment of freight, when a vessel is delayed by shipwreck, or capture, the freighter has only to sell the property, without consulting the master of the vessel, and perhaps, in this way, reap all the profit which he would have received, if the property had been transported, in safety, to the original port of destination.

A partial performance of a contract, particularly when accepted as such, always entitles the party performing to

(*k*) *Lutwidge* v. *Grey*, reported in *Abbott on Shipping* 249. *Luke* v. *Lyde*, 2 *Burr.* 882.

1804.

PINTO
v.
ATWATER.

a compensation proportioned to the services rendered. In such a case, however, the action should not be brought upon the special agreement. The action should be, as this action substantially is, an action of *assumpsit* for services rendered. On this idea, the case of *Cook* v. *Jennings* (*l*) may be reconciled with *Luke* v. *Lyde* before mentioned. The first mentioned order was brought on the special covenants, and decided on that ground ; the other was an action of *assumpsit* generally, and not an action founded on the original contract for the conveyance of goods. (*m*) It will be seen by inspecting the case of *Cook* v. *Jennings*, and the reasons of the Court, that they considered the law, as laid down by Lord MANSFIELD, in *Luke* v. *Lyde*, to be correct. A very familiar instance will illustrate the distinction referred to. If a carpenter enter into a contract to build a house, of a certain shape and dimension, but builds one wholly different from the contract ; if the person, for whom the house be built, take possession thereof, the carpenter can compel him to pay a *quantum meruit ;* but could not sustain an action on the contract, for this very obvious reason, that he has not performed the stipulations on his part.

With regard to the personal expences of the plaintiff in error, and his family, it is sufficient to remark, that they have nothing to do with the freight, are wholly distinct therefrom, and cannot be taken into consideration, either to increase or diminish the proportion of freight, which ought to be paid. (*n*)

BY THE COURT. The question is, whether the plaintiffs below shall be entitled to freight, according to the

(*l*) 7 *Term Rep.* 381.          (*m*) *Abbott on Shipping* 258.
(*n*) See *Abbott on Shipping, Chap* 7, *passim.*

voyage performed, without any regard to the salvage paid ; or whether the salvage shall diminish the freight in such manner, that the plaintiffs shall receive no more than a rateable freight for the property actually saved to the defendant. By the judgment of the Superior Court, the freight has been allowed according to the voyage performed, without reference to the salvage paid ; whereas, in the opinion of this Court, a rateable freight only should have been allowed, in proportion to the property actually saved to the defendant.

By the laws of nations, salvage is payable to the recaptors of a vessel, on vessel and cargo. In this instance, the recaptors were entitled to salvage ; and the compromise entered into, by the defendant, with the agent of the recaptors, was necessary, on his part, for the security of his property, and beneficial to all parties concerned, by saving the cost of admiralty process, and a sale of the property. The salvage is a loss, to which, by law, vessel, freight, and cargo are liable to contribute ; and, therefore, diminishes freight, in such manner, that the plaintiffs should recover no more than a rateable proportion of the property actually saved to the defendant.

For these reasons, the judgment of the Superior Court was reversed. The defendants in error then made a written motion, that this Court would enter judgment for such sum, as they were, by law, entitled to recover. This motion was denied, and the cause remanded to the Superior Court, that such further proceedings might be had therein, as to law doth appertain.