*Hartford,*
November,
1817.

ESCOPINICHE *against* STEWART.

If on a
contract to
transport
goods on
freight to a
certain
place, the
voyage is
performed
in part, and
the goods
are carried
to a differ-
ent port,
where the
owner vol-
untarily ac-
cepts them,
such accept-
ance is the
foundation
of a new
contract,
which the
law implies,
to pay the
stipulated
freight for
the whole
voyage in
proportion
to the part
performed
before the
vessel stop-
ped, or de-
viated from
her course.

THIS was an action of *assumpsit* for the freight of
thirty-nine casks and sixty bags of rice from *New-London*
to the *West-Indies.*    The declaration consisted of two counts.
The first count stated a contract, on the part of the plaintiff,
to transport the rice to *Antigua,* in the *West-Indies,* and on
the part of the defendant, to pay 441 dollars for the freight.
The second count stated, that the plaintiff, at the special
instance and request of the defendant, received the rice on
board to transport the same, for the defendant, to the *West-
Indies* for *a reasonable freight ;* that he transported the rice
thither accordingly ; and that a reasonable freight amounted
to 450 dollars.

The cause was tried at *New-Haven, August* term 1817,
before *Edmond, Smith,* and *Baldwin,* Js.

On the trial, the plaintiff produced evidence to prove, that
he was master of the brig *Hector ;* that, at the time stated
in the declaration, he, at the defendant's request, took on
board the *Hector,* from the *Ramilies,* a *British* sloop of war
then lying at *New-London,* the goods mentioned in the dec-
laration, upon an agreement with the defendant to transport
them to the island of *Bermuda,* for the sum of 441 dollars ;
that before the plaintiff arrived at *Bermuda,* he was taken
and carried into *Antigua,* a place farther from *Bermuda*
than *New-London,* with the rice on board ; that immediately
after the arrival in *Antigua,* and before the vessel was libelled
or condemned, the agent of the plaintiff took the rice from
the vessel, and sold it, and remitted the avails to the defend-
ant then at *Bermuda,* who received and kept the money. The
plaintiff also proved to the jury, that 9 dollars per cask,
and 1 dollar 50 cents per bag, was a reasonable and the
customary freight of rice, at that time, from *New-London* to
*Antigua.*    Upon these facts, the plaintiff contended, that he
was entitled to recover such reasonable and customary
freight.    The defendant insisted, that they laid no founda-
tion for a recovery upon this declaration.    The court charged
the jury, that if they were satisfied from the evidence, that
the plaintiff received the rice on board the brig in the man-
ner stated ; and that immediately after its arrival in *Antigua,*
the defendant's agent received it, and sold it, and remitted

the avails to the defendant at *Bermuda ;* and that the defendant accepted and retained the money ; the plaintiff was entitled to recover a reasonable compensation as freight to *Antigua.* The jury returned a verdict for the plaintiff accordingly. The defendant moved for a new trial on the ground of a misdirection ; and the motion was reserved for the consideration and advice of the nine Judges.

*Hartford,*
November,
1817.

Escopiniche
*v.*
Stewart.

*N. Smith* and *Bristol,* in support of the motion, contended, that the plaintiff was, at most, entitled to recover such proportion of the stipulated freight as the voyage performed in the direct course from *New-London* to *Bermuda* bore to the whole of such voyage ; but that he could, on no ground, recover a reasonable freight from *New-London* to *Antigua.* There was, in this case, a special contract to transport the goods from *New-London* to *Bermuda,* and freight was to be paid only on a delivery of the goods according to the terms of the contract. They have not been so delivered. Laying out of the case the acceptance of the goods at *Antigua,* there can be no claim at all for freight. What, then, is the effect of this acceptance ? It only excused the plaintiff from carrying the goods to *Bermuda ;* and the utmost length that the authorities have gone in such a case, is to render the shipper liable for freight *pro rata itineris peracti.* It would be manifestly absurd, to hold, that the defendant, by dispensing with performance, subjected himself to pay a higher freight than he would have been liable to pay, if the plaintiff had performed the contract according to its terms. The contract forms the basis of all the rights between the parties. The shipper is not supposed to be benefitted, except so far as the goods are advanced on the voyage specified in the contract. The state of the market at the port to which the goods are carried, is out of the question. *Lutwidge & al.* v. *Gray & al.* in Dom. Proc. *Abbott,* pt. 3. c. 7. s. 13. *Luke & al.* v. *Lyde,* 2 *Burr.* 882. *Pinto* v. *Atwater,* 1 *Day's Ca.* 193. *Armroyd & al.* v. *The Union Insurance Company,* 3 *Binn.* 437. 444. *& seq.*

*Daggett* and *Staples,* contra, admitted, that while the parties remained *upon the contract,* they must be governed by it, agreeably to the decision in *Cook* v. *Jennings,* 7 *Term Rep.* 381. ; but they contended, that the defendant, by accept-

ing the goods at a different port from that specified in the contract, waived the stipulation in his favour, and then stood upon the footing of a *benefit received,* for which the law will imply a promise to pay a reasonable compensation. Where the goods have been left at an *intermediate port,* as in most of the cases reported, no better method could be taken of ascertaining the *quantum* of service rendered, than by comparing the *iter peractum* with the stipulated voyage ; but where the goods are carried *beyond* the port of destination, there is no room for *apportionment.* But all the authorities take it for granted, and agree in this, that the acceptance of the goods by the owner renders him liable for *some* freight. The only sensible rule, in such case, is that which allows a *reasonable* freight.

SWIFT, Ch. J. It is a principle of maritime law, that where there is a contract to transport goods on freight to a certain place, if the voyage be in part performed, and the owner voluntarily accepts them at an intermediate port, he shall pay freight *pro rata itineris peracti*—that is, a rateable freight in proportion to the voyage actually performed. By the general rules of law, the master or owner of the vessel would not be entitled to freight, unless the whole voyage was performed ; and the goods delivered at the port of destination. But if the freighter will voluntarily accept them at an intermediate port, then this acceptance is the foundation of a new contract, and the law implies that he will pay a rateable freight. Such is the principle in the case of *Luke* v. *Lyde,* supported by all the decisions in *England,* and recognized by the case of *Pinto* v. *Atwater* in this state. No case can be found where it has been decided, that where the goods are received by the owner at an intermediate port, he shall pay reasonable or customary freight to the place where accepted ; for this would not be an equitable rule in many cases ; as the goods at such place might be of less value than at the port of destination, and the expence of transporting them there might be more than from the place where the voyage commenced. To determine whether it would be reasonable to pay freight, it would be necessary to examine the state of the markets at the place where the goods were received, and the freight to the place of original destination. This would lead to such an endless enquiry, that courts have

*Hartford,*
November,
1817.

Escopiniche
*v.*
Stewart.

never admitted it. They have adopted the rule of allowing, in such cases, a rateable freight; for if the owner voluntarily receives the goods at an intermediate port, he waives any claim for the fulfilment of the contract; and it is considered reasonable that he should pay for the part of the contract performed. If a man should hire another to labour for him for the term of a year, and at the end of six months, the hirer should consent to release the labourer for the remainder of the year, the law would imply a contract that he should pay rateable wages for the service performed. So, on the same principle, where the freighter releases the carrier from the performance of the residue of a contract, he shall pay for the part actually performed.

It is not now a subject of enquiry, whether this is the best rule that could have been adopted. It is sufficient to say, that it is the established rule of maritime law; and though it might be possible, that a more equitable one might be discovered, yet it is now more advisable to adhere to it, than to risk the consequences of the experiment. Indeed, this rule being well known, it is easy for parties so to conduct as to avoid any material inconvenience, while the adoption of a new one would lead to a long series of litigation, before the application of it could be perfectly settled. The parties, knowing the rule, can make provision for such an event as has happened in the present case. If no such provision is made, then the master may perform the contract, by transporting the goods to the place of destination, and he will be entitled to the whole freight; or if the owner should refuse, or prevent him from doing it, he would be entitled to the whole freight. The owner may refuse to accept the goods at an intermediate port, and insist that the master shall carry them to the destined place: if he refuse or neglect to do it, or is unable to do it, and the owner is under the necessity of receiving the goods, then he will be bound to pay no freight: or, in all cases, he may make a stipulation with the master respecting the terms on which he shall receive them. If no such stipulation is made, and the owner voluntarily receives them, he shall pay a rateable freight for the part of the voyage performed.

This must be the time and the place, when and where the disaster happened, which caused the vessel to depart from her course, and not the place where the goods were accept-

*Hartford,*
November,
1817.

Escopiniche
*v.*
Stewart.

ed; for such place may be further from the destined port than the place where the cargo was originally received. If, however, no part of the voyage has been performed, as where the vessel is prevented from entering the destined port by blockade, and she turns back, no freight can be recovered.

I am of opinion, that the plaintiff is entitled only to recover a rateable freight for that part of the voyage which he had performed at the time when his vessel was captured; and that a new trial ought to be granted.

In this opinion TRUMBULL, BRAINARD and GODDARD, Js. concurred; and EDMOND, SMITH and BALDWIN, Js. acquiesced, on the ground of precedent only.

HOSMER, J. The plaintiff received on board the brig *Hector* a quantity of rice to transport to *Bermuda*, for a certain stipulated freight. This engagement he never performed. The delivery of the rice, was a condition *precedent* to any legal demand for compensation. *Cook* v. *Jennings,* 7 *Term Rep.* 381. *Mulloy* v. *Backer,* 5 *East* 316. *Post* and *Russell* v. *Robertson,* 1 *Johns. Rep.* 24. *The Marine Insurance Company of New-York* v. *The United Insurance Company,* 9 *Johns. Rep.* 186. 190.

Notwithstanding the original agreement was broken, it is contended, that the *acceptance* of the rice at *Antigua,* lays a legal foundation for the recovery of a reasonable freight, on an implied contract, from the place of the reception of the rice, to that of its delivery. This principle the court recognized; and the jury might, and probably did, give the plaintiff the same compensation as they would have done, had the rice primarily been destined to that island. This, most obviously, was incorrect. Were the question now to be decided, for the first time, I should be of the opinion, unhesitatingly, that the plaintiff is entitled to nothing. The mere acceptance of the rice at *Antigua,* may have been irreparably injurious to the defendant, beneficial only to the plaintiff, and received merely to rescue the property from future jeopardy. Reason and justice, the foundations of implied contract, do not authorize the assumption that the defendant agreed to pay any thing for the property received. But the point has been established by numerous and uniform decis-

ions, that *some* freight is due.   A *new contract* has been implied from the acceptance of the goods, at a port different from the one to which they were destined, that the freighter shall pay a rateable proportion of the stipulated freight, for so much of the voyage as had been performed, when the disaster, which occasioned a deviation from it, took place. *Luke & al.* v. *Lyde*, 2 *Burr.* 882.   *Pinto* v. *Atwater*, 1 *Day* 193.   *Cook* v. *Jennings*, 7 *Term Rep.* 381.   *Mulloy* v. *Backer*, 5 *East* 316.   *Williams* v. *Smith*, 2 *Caines* 13. 21.   *Robinsons* v. *The Marine Insurance Company*, 2 *Johns. Rep.* 323. *Liddard* v. *Lopes & al.*, 10 *East* 526.   *Armroyd & al.* v. *The Union Insurance Company*, 3 *Binn.* 437.   *The Marine Insurance Company of New-York* v. *The United Insurance Company*, 9 *Johns. Rep.* 186. 190.   I cannot persuade myself, that the principle has any warrantable foundation, or that the rule of damages is just, or relative to the case.   A conformity, however, to the necessary rule of *stare decisis*, constrains me to sacrifice my own judgment, and to follow the precedents, so far as they lead.   But I shall anxiously resist their extension a single hair's breadth.

I am of opinion, that the charge to the jury was erroneous ; and would, therefore, advise a new trial.

GOULD, J.   I concur in the opinion, that there ought to be a new trial.   Whether, according to original principles, the plaintiff is entitled to recover at all, upon the facts here disclosed, it is too late to inquire.   For the case comes, plainly, within the rule, established in *Luke* v. *Lyde*, which has been too often recognized, to be questioned.   But by that rule, the plaintiff here is entitled only to *pro rata* freight, according to the *ratio* fixed in the original contract of affreightment.   The settled distinctions, as I understand them, are these : If the shipper, whose goods have, by any inevitable misfortune, been carried to a wrong port, requires the master to transport them to the original place of destination, and the latter refuses to do it ; *no* freight can be demanded : For it is the fault of the master, that they are not so transported.   If the master, on the other hand, offers to carry them to the port of delivery, but the shipper declines the offer, and takes them back into his own custody ; *full* freight is recoverable : Because complete performance of the contract, by the master, is prevented by the shipper

*Hartford,*
November,
1817.

Escopiniche
*v.*
Stewart.

*Hartford,*
November,
1817.

Escopiniche
*v.*
Stewart.

himself. But if the latter voluntarily receives the goods, without any such demand made, on his part, or refusal, on the other, and without any new express agreement, (in which case the non-performance of the residue of the voyage is not attributed, exclusively, to either party) freight is to be paid, in proportion to the part of the voyage performed, at the time of the disaster. The case of *Luke* v. *Lyde*, and that now before the court, both come within the last rule. But by the rule of damages, given to the jury, in the present case, the plaintiff is allowed *full* freight, as upon a *quantum meruit*, without regard to the rate, agreed upon by the parties, in the contract of affreightment, and for another, and much longer, voyage, than that embraced in the contract. This rule is not only unsupported by any legal principle, or authority, but replete with unjust and mischievous consequences: As it must frequently entitle a ship-owner, who has failed to perform his contract with a freighter, to a much greater amount of freight, even tenfold more, as the case may be, than if he had fully performed it. Now, it is very obvious, that a rule, like this, is opposed not only to the principles of law and common justice, but to sound policy: Since it may often operate as a temptation to wilful and collusive deviations, under some pretence of necessity.

The form of declaring, in the second count, is undoubtedly right. For if the plaintiff is entitled to any recovery, (and this the cases, cited at the bar, fully establish,) it must be upon an *implied assumpsit*. This was the form of action, in *Luke* v. *Lyde*, as is now ascertained (7 *Term Rep.* 385. *Abbott on Shipping*, 308.); and the subsequent cases recognize it, as the only proper one, upon a state of facts like the present. Upon the original express contract, the plaintiff can certainly recover nothing: As it has not been fully performed, on his part. This point has been often settled. *Bright* v. *Cowper*, 1 *Brownl.* 21. *Clarke* v. *Gurnell*, 1 *Bulstr.* 167. *Cook* v. *Jennings*, 7 *Term Rep.* 381. In the present case, the delivery of the rice, at *Bermuda*, is in nature of a condition precedent; and no rule in the law is more familiar, than that he, who sues upon a contract, imposing upon him such a condition, must aver, and show, performance of it.

But if the express contract is abandoned, as the foundation of a suit, why, we are asked, is it not so, to *every* purpose? And why should not the plaintiff recover, independently of

it, what the actual transportation is reasonably worth ? The principle, as I understand it, is, that a voluntary *acceptance* of the goods, by the shipper, in a case circumstanced like the present, is to be regarded as a *waiver*, by mutual consent, of the residue of the voyage, upon a tacit understanding, that the ship-owner shall still be paid as much of the *stipulated* freight, as he has performed of the original voyage : And that a promise is hence implied, on the part of the shipper, to pay such a proportion of the freight, *originally agreed for*, as the part performed of the voyage, bears to the whole : The rate, or aggregate sum, fixed in the original express contract, being considered, as an *assessment by the parties*, of reasonable freight for the *whole* voyage—and therefore, as furnishing a ratio, with reference to which, rateable freight, for *part* of the voyage, ought to be apportioned. And the rule seems highly reasonable. Indeed, if this ratio were rejected, freight *pro rata*, for part of a voyage, might exceed the stipulated amount of full freight, for the whole voyage.

New trial to be granted.