*Hartford,*
June, 1818.

Moseley
*v.*
Lord.

---

### ESCOPINICHE *against* STEWART.

A NEW trial was had in this cause, pursuant to the advice of the nine Judges, (*ante* 262. 269.) at an adjourned term of the superior court, at *New-Haven,* in *April* 1818, before *Trumbull, Baldwin* and *Hosmer,* Js.

The case, as it then appeared, was as follows. The defendant shipped 39 casks and 60 bags of rice, taken from the *British* ship *Ramilies,* lying off the port of *New-London,* on board the plaintiff's brig *Hector,* lying near the *Ramilies,* on a contract between the parties, that the plaintiff should transport this rice to the island of *Bermuda,* at a freight of three dollars per cask, and one dollar fifty cents per bag. The brig sailed on her voyage to *Bermuda,* and, after being two days out, was encountered with severe storms, which occasioned leaks in her ; and though she endeavoured to reach *Bermuda,* yet when she arrived in the latitude of that island, without reaching it, she put away for *Porto Rico.* In the latitude of *Porto Rico,* at a considerable distance to the eastward, the vessel and cargo were captured, by a *British* privateer, and carried into the island of *Antigua,* where she was condemned as prize of war ; but the prize agent or

Goods shipped on freight to a certain port, after part performance of the voyage, were carried to a different port, where they were taken, and sold, by a stranger, who remitted the proceeds to the shipper : held, that the reception of such proceeds, by the shipper, was not equivalent to a voluntary acceptance of the goods, so as to render him liable for freight *pro rata itineris peracti.*

owner of the privateer, on being informed that the rice was the property of the defendant, relinquished it, and delivered it to *Guy Richards,* a passenger in the *Hector.* *Richards,* without authority from the defendant, and not being his agent, sold the rice, and remitted the proceeds to the defendant, at *Bermuda,* who received the same. The place of capture, as well as the island of *Antigua,* was further from *Bermuda,* than the distance between *New-London* and *Bermuda.* The plaintiff claimed, that he was entitled to recover freight in proportion to the voyage performed when the vessel bore away for *Porto Rico,* by reason of the defendant's having received the proceeds of the rice ; such reception of the proceeds being equivalent to a voluntary reception of the rice, by the defendant, or his authorized agent. The defendant claimed, that it was the duty of the plaintiff, as master of the vessel, to keep the rice, and transport it to the place of its original destination ; and that the defendant, under the circumstances of the case, was liable to pay no freight whatever. The court charged the jury, that the plaintiff was not entitled to recover. The jury found a verdict for the defendant accordingly ; and the plaintiff moved for a new trial, on the ground of a misdirection. The case was reserved in the usual manner.

*Staples,* in support of the motion.

*N. Smith,* contra.

SWIFT, Ch. J. Nothing but the voluntary acceptance of goods at an intermediate port, by the owner or his agent, will render him liable to pay a rateable freight in proportion to the part of the voyage performed. Such acceptance releases the master or owner of the ship from his contract to carry the goods to the place of destination, and the law will imply a contract to pay rateable freight. But the reception of the money for which the goods sold, is not equivalent to a voluntary acceptance of the goods: for this amounts only to a ratification of the *sale* of the goods, and a consent to receive the *money,* in lieu of the claim for the goods, and a non-performance of the contract.

In the present case, the goods were taken and sold by a stranger, without any authority from the defendant ; and on

the avails being remitted to him, he consented to accept the money. He had no opportunity to require or waive the performance of the contract. He had a demand against the plaintiff, either for the goods, or for non-performance of the contract to deliver them at *Bermuda.* He had no option but to accept the money, or resort to his legal remedy. He was under no obligation to pay any freight. His acceptance of the money, then, could only operate as a waiver of his legal remedy : it could amount only to a ratification of the sale of the goods ; it was a satisfaction of his demand against the defendant for his non-performance of his contract ; it discharged any claim against him. But this can never be construed to imply a consent, on the part of the defendant, to make a new contract, and to render himself liable to pay freight for a voyage which had never been performed, and for which he was not legally chargeable : for this would be giving a double effect to the acceptance of the money for which the goods were sold. It would not only release the plaintiff from a legal demand in favour of the defendant, but would create a new demand in favour of the plaintiff against the defendant.

These principles are not only warranted by reason and justice, but are fully established by the cases of *Hunter* v. *Prinsep,* 10 *East* 377. and *Armroyd* v. *The Union Insurance Company,* 3 *Binn.* 437.

HOSMER, J. On principles of common law, the ship-owner is not entitled to freight, until he has delivered his cargo pursuant to contract. If by reason of a tempest, or any other inevitable accident, he is compelled to seek an intermediate port, on his arrival there no freight is earned. The ship-owner, if he pleases, may transport his cargo to the destined port, and thus, by the performance of his engagement, earn the stipulated compensation. On the other hand, if the shipper demands his goods, and is the cause of their being carried no farther, he is bound to pay full freight.

By the marine law, if the shipper does not require his goods to be carried to the port of their original destination, but voluntarily accepts them at the intermediate port, he is obligated to pay freight *pro rata itineris peracti.* This is

*Hartford,*
*June, 1818.*

Escopiniche
*v.*
Stewart.

on the ground that a new contract is implied from the acceptance of the goods, the freighter, by this act, having released the ship-owner from any obligation to transport them further. *Escopiniche* v. *Stewart,* 2 *Conn. Rep.* 262. Thus far the law is well settled.

The court is now urged to proceed a step further. The brig *Hector,* destined for *Bermuda,* was captured and carried into *Antigua.* The defendant was not at this island, nor had he any agent there. A Mr. *Richards,* without any authority, received the articles belonging to the defendant, disposed of them, and remitted him the avails. It is now contended, that the reception of the avails by the defendant, ratifies the contract of *Richards* by a species of retrospective confirmation, and furnishes ground to imply a new contract to pay a reasonable freight. No case has been cited to authorize the principle contended for. Amidst this silence of decisions, in behalf of the plaintiff, it is said, that there is a strong analogy between the acceptance of the goods by the freighter, and the reception of the avails from the self-constituted agent. I am of opinion that there is no analogy. He who voluntarily accepts his goods, before they have reached the port of destination, the ship-owner not having refused to transport them further, dispenses with the performance of his engagement. With plausibility it may be urged, that it is not unreasonable he should pay freight in proportion to the benefit received. But the case before us presents very different features. The defendant had no opportunity of exercising any option relative to the transportation of his goods. They were, by the ship-owner, without the defendant's participation or concurrence, abandoned to a stranger; the further transportation of them was virtually refused, and the freight voluntarily relinquished. After the sale of the cargo by *Richards,* and until long subsequent, there is no pretence for the assertion, that any freight was due to the plaintiff. By what legal fiction is this dormant claim resuscitated? Implied contracts are those which reason and justice dictate. To infer from the mere reception of the avails by the defendant, that he contracted to pay freight, would be to give a language to that transaction, in opposition to the most obvious justice. It is too unreasonable to contend, that the defendant was obligated to renounce his property, or to receive it under the

presumed contract, that he would pay freight which had never been earned, but which had been voluntarily abandoned.

Sufficient is it for the defendant, that there is neither precedent nor principle to authorize the plaintiff's demand. The opposite, however, has been frequently and correctly decided. *Hunter* v. *Prinsep & al.* 10 *East* 378. *Scott* v. *Libby & al.* 2 *Johns. Rep.* 336. *Armroyd & al.* v. *The Union Insurance Company,* 3 *Binn.* 437.

Gould, J.   As this case appeared before the Court, at the last term, it was within the rule in *Luke* v. *Lyde ;* but as the facts are now presented, it is clearly not a case of freight. Upon strict principle, it has always appeared to me very difficult, when the whole voyage is not performed, to vindicate the rule of *pro rata* freight, at all.   At all events, the determination in *Luke* v. *Lyde* has carried that rule to its utmost limits : and even those limits do not include the present case.   The allowance of rateable freight in such cases, is founded, only, upon a *voluntary acceptance* of the goods, by the shipper, at the intermediate port, or what has been deemed equivalent to such an acceptance.   Here, there has been neither.   It is urged, however, that the receipt of the *avails* of the rice, by the defendant, was a ratification, by an assent subsequent, of the prior sale by *Richards ;* and therefore, tantamount to a voluntary acceptance of the rice, at *Antigua.*   But the receipt of the avails, under the circumstances of this case, could not, surely, amount to a ratification of the sale, to any other intent, than that of barring a recovery against the plaintiff, for his neglect to deliver the rice, at the place of destination.   The receipt of the money produced by the sale, might be material and effectual to this purpose ; upon the principle, that the owner of the goods shipped, after having received the price of them, has no right to demand the goods themselves, or any further compensation for them.   But an acceptance, on which the ship-owner may found a claim to *pro rata* freight, is a transaction of a very different nature. And as to the case of *Baillie* v. *Modigliani,* (*Park. Ins.* 53.) it is sufficient to say, without commenting upon particulars, that, in the circumstances, under which the avails were received, that case, as explained by Lord *Ellenborough,* (10 *East,* 392, 3.) is clearly distinguishable from the present.

*Hartford,*
*June, 1818.*

Escopiniche
*v.*
Stewart.

Here, the receipt, by the defendant, of the avails of the prior unauthorized sale, can, upon no principle, be construed into a dispensation with the performance of the residue of the voyage. Of course, no argument for *pro rata* freight, can be implied from the transaction.

The other Judges were of the same opinion, except CHAPMAN, J. who was absent when the case was argued, and declined giving any opinion.

New trial not to be granted.