IN ERROR.

••••••

ALBANY,
Feb. 1808.

Hartshorne
v.
Sleght.

Hartshorne, Rhinelander and others, } *Plaintiffs in Error*,

*against*

John Sleght and Cornelius Sleght, } *Defendants in Error.*

Where a writ of error was brought on a bill of exceptions from the supreme court, and the cause was decided in favour of the plaintiffs in error, and a *venire de novo* awarded, and on the new trial of the cause below, a second bill of exceptions was taken on the same point, and a second writ of error brought, this court, on motion, quashed the second writ of error.

AT the last court, a writ of *venire facias de novo* was awarded in this cause. (2 *Johns. Rep.* 549.) At the last sittings in *New-York*, the *Chief Justice*, before whom the cause was tried, gave his opinion, that the paper in question was a *sea-letter*, agreeably to the decision of this court, when the cause came before them, on a former writ of error. To this opinion, the counsel for the plaintiffs in error, tendered a bill of exceptions. It was objected, that after this question had been definitively settled, in the court for the correction of errors, another bill of exceptions would not lie; but the *Chief Justice*, after some consideration, signed it; and on the bill of exceptions, a second writ of error was brought to this court. From the transcript of the record sent up, it appeared that the second bill of exceptions was precisely similar to the one on which the former writ of error was brought. Errors had been assigned, but there was no joinder in error.

*Hoffman*, for the defendants in error, now moved to quash the writ of error, on the ground that a second writ of error would not lie for the same cause.* To show that this was the proper court, in which the writ was to be quashed, and not in the supreme court, he cited *Doug.* 336. 2 *Sellon*, 538.

* 2 *Bac. Abr.* 477.(*Error*,G.) note. 2 *Sellon*, 540.

*Pendleton* and *Harison*, contra. A court whose decisions may be revised by a higher tribunal, will not, by quashing a writ of error, deprive the higher tribunal of the power of reviewing a decree, on an appeal. An appeal lies from the decision or decree of the highest court of law or equity, in any state, to the supreme court of the *United States*, in the cases mentioned in the 25th sec-

A

tion of the judiciary act ;* and as this case draws into
question the construction of a treaty of the *United States*,
the plaintiffs in error have a right to appeal from the final
decision of this court. The former decision in this court
was not a final decree ; no final judgment could be pro-
nounced on the record then before the court ; it was ne-
cessary to award a *venire de novo*. No writ of error lies
but on a final judgment or decree.† Suppose a writ of
error brought from the court of common pleas to the su-
preme court, after a *venire de novo* had been awarded,
could the supreme court, by quashing the second writ of
error, deprive the party of the opportunity of bringing his
cause to this court?

A writ of error is sometimes quashed for informality or
irregularity ; but it is a novel attempt to quash the present
writ, because the law has been settled. It is objected, that a se-
cond writ cannot be brought on the same question, but how
is this court to know that there are not other points involved,
and to be decided, on the second bill of exceptions ? A
second writ of error may be brought where the first has
been abated or discontinued, or in case of a voluntary non-
suit, though it may not be a *supersedeas*. On the new trial,
the plaintiffs in error might go into any matter of defence
that they thought proper. The judge, at the sittings, could
not refuse to sign the bill of exceptions tendered to him.
The act is imperative.‡ There has not been a final de-
cree in this court ; and it is enough that the plaintiffs in
error, have, *prima facie*, a right of appeal to the supreme
court of the *United States*.

*T. A. Emmet*, in reply. The motion is novel, because,
it is without precedent, that where a question has been
settled by a court of *dernier resort*, the cause can be
again brought before the same court for a second decision.
If a party becomes nonsuited, on a writ of error, he cannot
have a second writ of error. It is only in case of acci-
dent or inadvertence, that a second writ is allowed.
This is, in fact, a writ of error to this court, to review
its former decision. If the plaintiffs in error wished to

IN ERROR.
● ● ● ● ● ● ●
ALBANY,
Feb. 1808.

Hartshorne
v.
Sleght.

* *Laws U. S.*
v. 1. p. 47.
† 6 *East*, 333.

‡ *Laws N. Y.*
v. 1. p. 276.
sect. 6.

*IN ERROR.*
.......
ALBANY,
Feb. 1808.

Hartshorne
v.
Sleght.

carry the cause to the supreme court of the *United States*, they ought to have appeared from the decision on the first bill of exceptions.

The CHANCELLOR. (After stating the facts and proceedings in the cause.) The parties have changed situations. The plaintiffs in the court below, having, on the former bill of exceptions, maintained the errors stated in their general assignment of errors in this court, the defendants below have now brought their writ of error. On this, they have made a special assignment of errors; that by certain treaties of the *United States* with the *French* nation, the *Dutch* nation, and the *Spanish* nation, respectively made, (which nations were, on the 13th day of *October*, 1798, and before and after, at open war, and with all which nations the *United States* were at peace,) in case either of the contracting parties should be engaged in a war, the ships and vessels belonging to the other party, should be furnished with *sea-letters*, or passports, according to the form annexed to the said treaties respectively; one of which sea-letters was to be delivered to every vessel belonging to a citizen or citizens of the *United States*, by the direction of the executive government, as is set forth and specified in the record, and proceedings, in the cause: and the defendants, now plaintiffs in error, did specially, and in due form of law, set up and claim, as a right founded on the true construction of the said treaties, that the defendant in error ought to prove, that the said vessel had sailed with such sea-letter, and that not having so sailed, they were not entitled to recover on the said policy, which claim the chief justice had disallowed on the trial. A general assignment of errors was added; but no joinder in error has been filed.

A motion has now been made to quash the second writ of error, because the bill of exceptions presents the same point which has been already determined, as the error relied on.

The writ of error is a writ of right, and issues of course, at the instance of the party, conforming to the statutory restraint, which requires the certificate of counsel as a pre-

requisite to its issuing. If, however, this legal right is wrested to the purposes of vexation or oppression, I have no doubt, but that it may be met in a summary way, by quashing the writ ; nor is it contended, that if a proper case presents itself, it may not be done, in this stage of the suit, and in this court.

There are several cases on the subject of quashing writs of error, for variance between the writs and the records. So in the case of the former writ being *nonprossed*, which is an evidence that the second is brought for vexation or delay. But in ordinary cases, a writ of error operates as a *supersedeas*, and the rule that a second writ of error in the same suit shall not *so* operate, shows that the loss of the one is not always a bar to bringing another.*

A case circumstanced like the present, is not of frequent occurrence. It is settled, that in determining cases in error, a court of error must, upon reversal, if the plaintiff brings the writ, give the same judgment, which the court below ought to have given.† Hence, when error is so apparent in the record, as to put it in the power of the court of errors to dispose of the cause definitively, the judgment is final. Here the cause came up originally on an exception to the opinion of the court below, which had excluded some of the evidence offered. That evidence having never been admitted, could not afford a basis for a final judgment, and it became, of course, necessary to render a judgment of an interlocutory nature, and to send the cause back to have the evidence that had been rejected, introduced.

This court were of opinion, that the evidence which the court below had rejected, was proper, and gave the judgment which the court below ought, in that case, to have given, by deciding, that the evidence was admissible ; and for that purpose, ordered a *venire-facias de novo*. That evidence has, accordingly, been admitted ; and now the defendants in the court below, have brought their writ of error, relying on the *treaty sea-letter;* and alleging, in the first place, that in admitting this evidence, without permitting them to prove, by *parol*, the general accepta-

---

*IN ERROR.*
•••••••
ALBANY,
Feb. 1808.
Hartshorne
v.
Sleght.

* *Law of Er-*
*rors*, 116. 1
*Vent.* 353. *Godb.*
66. 68.

† *Viner, Error,*
D. b. 5. 1
*Salk.* 262.

tion and understanding on the subject, in the terms of the former exception, is manifest error, and relying on the general assignment, which may be sustained either in the exception, if well taken, or by some error apparent on the record.

Unless the court are prepared to say, contrary to the intimation which, it has been stated, they have sanctioned by their former judgment, that if " there were two instru-ments, one legalized by the treaty, and the other by statute of the same denomination," *parol* testimony cannot be ad-mitted to explain ; unless they will undertake to decide that there are no errors apparent in the record, which the plaintiff in error may rely on, for the reversal of the judgment, the doctrine contended for, that as one of the parties has had a judgment reversed, because there was an error in excluding the evidence which he offered, the other shall, for that reason, be precluded from showing that there are errors to his prejudice in any part of the pro-ceedings, cannot be maintained.

This court have not decided that a certificate of owner-ship was a *sea-letter*. If they had done so, it would have been an extra-judicial opinion, on a point not in con-troversy between the parties, for a bill of exceptions is not to draw the whole matter into examination again ; it is only for a single point, not appearing in the record, and on which the party must place his finger, and not wander at large into the record.* But the court merely decided that there was error in pronouncing *that it was not a sea-letter.* This must, of course, be tested by its relation to the sub-ject matter on which that opinion was expressed, and that was the exception taken on the trial.

. On the trial, on the part of the plaintiff, in the court below, it was contended, that the treaty sea-letter was ex-clusively entitled to that appellation ; and on the part of the defendants, that the certificate of ownership had re-ceived the denomination of sea-letter from general under-standing, and not from the laws of the *United States*, and though in the conclusion of the bill of exceptions, it is

* 1 *Bac. Abr.* 527, 528.

IN ERROR.
.......
ALBANY,
Feb. 1808.

Hartshorne
v.
Sleght.

also stated, that the counsel for the plaintiffs requested the court to charge the jury, that the sailing with such certificate was a compliance with the warranty in the policy, yet that request, if not limited to the evidence offered, is decidedly at variance with the special matter of exception, and involves the absurdity of offering *parol* proof as an inducement to its admission, and, without any additional matter introduced, insisting upon its being admitted without such proof. From the mode of introducing it, I therefore think, nothing more is to be legally inferred than that it was a general claim, formally expressed, in all events, so as to cover the particular exceptions, and to prevent all doubt, as to the extent of their application.

The judgment formerly pronounced in the cause, by this court, which, though an unusual departure from the ordinary simplicity of the judgments of the courts of common law, by declaring that the court below had erred in determining, that " the paper writing, offered by the plaintiffs in error, on the trial, was *not a sea-letter*," settled the precise point intended to be determined ; for, whatever might be the reasoning which led to it, that judgment expresses the collective opinion of the court, and must be the governing one ; and the opinion which dictated that judgment, as to be deduced from the question submitted by the parties, on the bill of exceptions, to which it ought to be a legal response, is, that the paper rejected was such an one, as from the latent ambiguity of the policy, became a proper subject of explanation by *parol.*

If the opinion had stood solely on the ground, that the certificate of ownership was a *sea-letter*, the legal effect would have been to affirm that both that and the treaty document were *sea-letters ;* and if so, a vessel sailing with one or the other of them, must be considered as complying with the stipulation, that she should sail with a *sea-letter* ; no latent ambiguity could then exist, to become a proper subject of explanation by *parol* evidence.

If this reasoning is correct, there can be no ground for quashing the writ, merely because the bringing it is vexatious.

As to the arguments which have been urged, relative to an ultimate decision in the supreme court of the *United States*, I think the path of duty is plain and unembarrassed. This court are to decide as if no revisionary tribunal existed. If it were capable of taking any measures to evade the exertion of a constitutional revision, those measures, where the power exists, would probably be defeated. This court would not tolerate to have its justice eluded by the tribunals, whose judgments or decrees they are authorised to correct, and that justice would always be enforced, and made commensurate to its legitimate jurisdiction; and so, I trust, will be that of the supreme court of the *United States*.

I think, upon the whole, there is neither authority or principle to warrant this application, and that the motion ought to be denied, with costs for resisting it.

CLINTON, Senator. This cause, at the last session of this court, after a full discussion, and deliberate consideration, was determined in favour of the present defendants in error. At the new trial, the plaintiffs in error tendered a bill of exceptions to the opinion of the court, on the very point which had been solemnly settled here; and we are now called upon, a second time, to decide the same question. This mode of proceeding would appear to be intended merely for delay; but we are told that it is for the purpose of carrying the cause to the supreme court of the *United States*, in the route marked out by the judiciary act. By recurring to the *judiciary* act of the *United States*, it will be found, that this cause, as it relates merely to the proper denomination of a certain instrument, and the intention of the contract between the parties, does not come within the jurisdiction of the supreme court of the *United States*. The former decision of this court did not controvert the validity of any treaty or statute of the *United States*; nor did it draw into ques-

IN ERROR.
........
ALBANY,
Feb. 1808.
Hartshorne
v.
Sleght.

tion the construction of any treaty or statute ; nor did it decide against any title, right, privilege, or exemption specially set up, or claimed under any such treaty or statute. On the contrary, it admitted the obligatory force of the treaty, the legitimacy of the sea-letter mentioned in it, the application of that instrument, as recognised in the laws of the *United States*, to this case ; and established a construction favourable to the party claiming the benefit of a statute.

But the plaintiffs in error, if they wished to have carried the cause to the supreme court of the *United States*, ought to have brought a writ of error, for that purpose, when the cause was determined by this court. That judgment was final, as to the points in controversy between the parties. The principle was settled, and the remitting of the cause to the supreme court, was merely for the purpose of ascertaining the damages. When the act of congress speaks of a final judgment, or decree, it is as distinguished from an interlocutory judgment or decree ; and it intends the application of the law to the case, by the court of supreme jurisdiction, and in the *last resort*. If the plaintiffs in error have mistaken the time proper for bringing their writ of error to the supreme court of the *United States*, it is their own *laches*, and they ought not to be indulged now, to the great expense and delay of the opposite party.

But there is, in my mind, a decisive answer to all the considerations arising from an intention to carry this cause to the supreme court of the *United States*. A court ought to pronounce the law upon the merits of the case, without reference to other tribunals ; and should act as if their judgment was to be final and conclusive. It ought neither to accelerate nor retard appeals from its decisions : If it has any leaning at all, in a case like the present, it ought to be against the plaintiffs in error. Although I do not subscribe to the maxim, that he is a good judge, who enlarges the jurisdiction of his court ; yet I do not hesitate to say, that it is the duty of all courts, to guard against

encroachments upon their rights ; and situated as the state courts are, in relation to those of the general government, and with volumes of experience before us, showing the subtle contrivances and fictions, by which some of the higher courts of *England* have drawn to themselves every object of controversy, I think that we ought not to go out of our way to sustain applications like the present.

But to return to the merits of the cause. The error assigned has been recently decided upon. Shall parties, then, be permitted to multiply writs of error without end ? Shall the weight of purse, not the weight of justice, preponderate in the scale of controversy ?

Bills of exceptions were unknown to the common law. The statute authorising them, was intended to permit the party aggrieved to state his exception to the judge, with a view of having the opinion or decision re-examined in a higher tribunal. When this review has been taken, the object of the law is answered, and its intention fulfilled. The act does not go further. The application for a bill of exceptions ought, therefore, to have been overruled, as oppressive, vexatious, and not within the remedy contemplated by the statute. The cause is, however, before us, and it does not avail the plaintiffs in error to say, that courts may, and ought to review their own decisions. This court will hardly admit that doctrine. A motion for a rehearing, after judgment, has never been made or sustained. When a cause has been once settled, when a decision has been pronounced here, the law is established ; and no power can change it, but the legislature. The rule becomes binding, not only upon all subordinate tribunals, but upon this court. That we ought not again to pronounce the law, but that we ought to dismiss the cause at once, without a hearing, appears to me to be the proper course. It would be trifling with the court to rehear it on its merits; and this is not even contended for, or desired, by the plaintiffs in error,

A writ of error must be quashed in the court where it is returnable. (*Doug.* 339.) The principal ground for

quashing is for informality ; but other grounds are indicated, as the want of all or proper parties ; and it is stated, (2 *Sellon*, 406.) that the court would not quash a writ of error on motion, though it appeared to have been brought twenty-nine years ; because, if they did, it would deprive the plaintiff in error of the benefit of replying to the exceptions in the statute, admitting clearly that the writ would have been quashed, on the merits of the case, if there had been no exceptions in the statute. Quashing, or annulling a writ of error is, therefore, not confined to matters of form. The case before us, is *sui generis*. A similar one is not to be found in the history of judicial determinations. The decision, heretofore made in this case, so far as it establishes a general principle, is the law of the land. So far as it is confined exclusively to the parties, it is *the law of the case*, and can never be called in question, or examined in any court of this state. In quashing this writ, we declare it a nullity ; we declare that it ought not to have been issued ; and we declare, that after having deliberately considered, and solemnly adjudged the controversy before us, we will not permit a round of vexatious litigation, and an accumulation of unnecessary expense.

I am, therefore, for quashing the writ, with costs.

This being the opinion of the majority of the court, it was, thereupon, ORDERED and ADJUDGED, that the writ of error in this cause be quashed, (the same having improvidently issued,) with costs.

*Motion granted.*