[LANCASTER, JUNE 3, 1828.]

## REITENBACH *against* REITENBACH.

### IN ERROR.

Where the question was upon the validity of a judgment entered under warrant of attorney, upon a bond given by a father to his son, soon after the son became of age, and when the father was about to become insolvent, the alleged consideration of which was, services rendered by the son to the father: *held*, that it was competent to the creditors of the father, on the application of whom the judgment had been opened, for the purpose of letting them into a defence, to show, that on a sale by the sheriff of the father's goods, the son had claimed, and retained as his own property, a number of the articles levied on.

A combination between the father and the son, to defraud the creditors of the father having been proved, *held*, that it was competent to the creditors to give in evidence declarations by the father, in the absence of the son, that the bond was given for the sole purpose of keeping off creditors, and that it was without consideration.

WRIT of error to the Court of Common Pleas of *Lancaster* county.

The trial in the court below was between *Daniel Reitenbach*, plaintiff, and *Peter Reitenbach*, defendant. It was to test the validity of a judgment entered on a bond and warrant of attorney, which *Peter*, when he was about to become insolvent, had given to *Daniel*, his son. This judgment having been opened on the application of *Peter's* creditors, who carried on the defence in *Peter's* name, and who alleged fraud between the father and son; they proved by a witness, some declarations by *Peter*, made in *Daniel's* presence and hearing, and without any contradiction by *Daniel*, that the judgment was given to keep the creditors off; that no one could push, and that it would be a scare-crow. The creditors next proposed to prove, by the same witness, other declarations by *Peter*, that the sole purpose of the bond was to keep off creditors, and that it was without consideration. But these declarations not appearing to have been made in the presence of *Daniel*, and not being proved to have been assented to by him, were, therefore, objected to on the part of *Daniel*, and overruled by the court; which formed the ground of the first bill of exceptions. 2. The creditors then offered to prove, that on a sale by the sheriff of the goods of *Peter*, the father, *Daniel*, the son, claimed, and retained as his own property, a number of articles which had been levied on. This was objected to, and overruled by the court, and a second bill of exceptions thereupon taken.

*J. Hopkins*, for the plaintiff in error, admitted the rule of law, that fraud is not to be presumed. But a part of the rule is, that fraud may be inferred from circumstances: otherwise, this sort of knavish combination can never be reached. A boy, half a year

(Reitenbach *v.* Reitenbach.)

above age, takes a judgment bond of four hundred and sixty dollars from an insolvent father. This is charged to be a mere scheme and pretext for the benefit of the father. It was used solely for his benefit. His confessions are offered in evidence. Witnesses, who were actually present at the contrivance, can hardly be produced. It may be easily seen how intolerable in practice, a rule must be, that the son, in cases like this, shall not be affected by the declarations of the father, under the pretence, that he claims not under, but adversely to the father, when the knowledge of the fraud, and of the whole object of the combination had been proved against him. The principle of law which I submit to the court is, that in civil cases, and even in criminal cases, the declarations of one of the contrivers and partners, is evidence against another, to whom the participation in the fraud has been brought home by previous evidence. 1 *Phil. Ev.* 76. *Coxe's N. J. Rep.* 13. *Dostwich* v. *Lewis,* 1 *Day,* 33. *Collins* v. *The Commonwealth,* 3 *Serg. & Rawle,* 220. *M'Nally's Ev.* 611. *Meade* v. *M'Dowell,* 5 *Binn.* 195.

2. On the second exception, the proof was material to show, that over and above the four hundred and sixty dollars, *Daniel,* the son, pretended to have earned by his short services to his father, sundry articles of personal property in his father's possession. It is said, that this error, if error it was, was cured by the same evidence being afterwards given on the trial. That fact is not admitted. At any rate, it does not appear upon the record. Admit even the fact to be so: yet the court did not change their opinion. And evidence creeping into a cause accidentally against the declared judgment of the court, can have no weight with the jury.

*Norris,* for the defendant in error, protested against applying the rules of evidence in high treason and conspiracy, against the obligee in a bond. This very question has been expressly decided in *Wolf* v. *Carothers,* 3 *Serg. & Rawle,* 240. All the judges in that case gave separate and unanimous opinions, that the obligee is not to be affected by the confessions of the obligor. He shall not exonerate himself by his own declarations. No principle can be more obvious. *Peake's Ev.* 16. *Whiting* v. *Johnson,* 11 *Serg. & Rawle,* 328.

2. To the second point, a conclusive answer is, that the evidence excluded, was afterwards given in full upon the trial. *Wolverton* v. *The Commonwealth,* 7 *Serg. & Rawle,* 273. *Brown* v. *Downing,* 4 *Serg. & Rawle,* 498. *Preston* v. *Harvey,* 2 *Hen. & Munf.* 55. *Allen* v. *Rostain,* 11 *Serg. & Rawle,* 362, 373.

The opinion of the court was delivered by

SMITH, J.—This suit originated by the entry of a judgment by *Daniel Reitenbach* against *Peter Reitenbach,* on a warrant of attorney, on the 7th of *October,* 1822, in the Court of Common Pleas of *Lancaster* county to *August* Term, 1822, No. 293. On the 8th of *October,* 1822, a *Fieri Facias* issued. On the 18th of *December,*

(Reitenbach *v.* Reitenbach.)

1823, *William Brinton,* jr. a judgment creditor of *Peter Reiten-bach,* on an affidavit filed, obtained a rule to show cause why the creditors of the said *Peter Reitenbach,* the defendant, should not be let into a defence, and why all proceedings on the execution should not be stayed. This rule was made absolute, and the cause being put to issue, came on to be tried, when a verdict and judgment were rendered in favour of the plaintiff, *Daniel Reitenbach.* In the course of this trial, several bills of exceptions were taken, of which two only are offered to the attention of this court.

The paper book furnished by the plaintiff, *Daniel Reitenbach,* is very diffusive, and exhibits the cause in its whole progress upon the trial. As the two bills of exceptions neither embody, nor refer to this mass of matter, it could not correctly enter into the discussion of the subjects contained in the bills of exceptions, nor into the deliberations of the court upon them. A bill of exceptions is given by the statute to bring matters of importance, which occur in the course of a trial, on the face of the record, which would otherwise not be found there, so as to secure a review of them by a superior court, if either party should find himself aggrieved by the decision of the inferior court upon them. In its nature, it therefore, is not designed to draw into question, all the occurrences of the trial, but that matter alone which it embraces; and which ought to be set forth with clearness and precision. The rejection or admission of evidence, or testimony, or legal questions raised on facts admitted, are the appropriate objects of it; in the decision of which either party thinks himself injured. See 1 *Bac. Ab.* 528. 3 *Johns.* 558. 5 *Johns.* 467, and 8 *Johns.* 507. These two bills before the court, exhibit all the testimony necessary to give a correct view of the offer, and found upon that testimony the right of the creditor to introduce other testimony which he offered to the court, and in which he was overruled. This alone we have authority to examine, and, therefore, we cannot do, as the counsel of the defendant in error pressed us to do, take an excursion with him through the whole of this voluminous book. Counsel would save themselves much labour, trouble, and expense, and greatly economize the time of this court, so precious to themselves and their clients, as well as to the court, if they would, in taking their bills of exceptions, exclude every thing from them, which is not essentially necessary to raise the question of law that is to be discussed and decided; and to present that, in a clear and concise form. This observation is made from an ardent wish to correct a very vicious and unfortunate practice which prevails in taking bills of exceptions; by which, matter altogether useless, and testimony entirely foreign to the point, designed to be raised, is forced into them, to the great labour, expense, and trouble of the profession; to the great inconvenience and drudgery of the trying courts in settling the bills; and to the great annoyance of the supervising courts, in searching through a paper book, swelled into a pamphlet, to find out the matter which they are to

(Reitenbach *v.* Reitenbach.)

determine. A reformation in this respect would greatly save the time of the court for the use of suiters, benefit the profession, and relieve the court from a great deal of useless drudgery.

I will now approach the bills of exceptions themselves: and, from the first bill relied on, it appears, that the creditor offered to prove, that on the sale of *Peter Reitenbach's* property by the sheriff, *Daniel Reitenbach* claimed, and *retained* a number of articles, which had been levied on. This, on an objection by the plaintiff, the court overruled, and would not permit the creditor to give in evidence. Now, to me, it is exceedingly clear, this evidence should have been received; it was important, and had a direct bearing on the question before the court; and that it had so, will, I think, be evident on an attentive consideration and examination of the whole matter. And, in order to arrive at a just conclusion, we must bear in mind, that the bond in question was given by a father to a son, for services and work done, and this, (in the language of the testimony,) after the son had come of age. Those services continued for six months—the bond was for four hundred and sixty dollars—a large sum for work and services rendered in so short a period. Under these circumstances, then, the creditor alleged, there was fraud in the transaction, and the bond given for an amount not due; and, to prove that this was so, he offered to show, that the son had claimed, nay, retained a number of articles, which had been levied on as the father's property; that, therefore, the son was paid for his services, and could have had no demand against the father at the time the bond was given. If this were proved, it would be for the jury to say, whether the amount of the bond was just, or how much was due, if any thing. This evidence should have been permitted to go to them. But the court below refused the offer, and in the opinion of this court, therein erred.

We are also of the opinion, that the court erred, when they refused to allow the testimony mentioned in the second bill of exceptions. On the trial, the creditor had given strong evidence to show, that *Daniel Reitenbach* and *Peter Reitenbach*, had entered into a scheme to prevent others, the creditors of *Peter Reitenbach*, from collecting and obtaining their debts: the giving of this very bond was to be the means of carrying the project into effect; and, it appeared, that they had not only laid a plan to accomplish their object, but had gone on, and attempted to draw one *Jacob Eshelman* into their scheme; in fact, disclosed in part to him, how the creditors would be kept off. The creditor having thus established by proof, a combination between the father and son, to defraud and delay creditors, in order to show the same more completely, proposed to prove, and give in evidence, the declarations of *Peter Reitenbach,* made in the absence of *Daniel Reitenbach;* what he had said before the bond was given, of their intention of giving the bond to *Daniel Reitenbach* to keep off the creditors, and that it was given without consideration, and for that purpose only. This too, the court over-

(Reitenbach *v.* Reitenbach.)

ruled. Now, I take the law to be, that the declarations of a party, made in regard to such an illegal act, after a combination to do the act has been established or proved, are not only evidence against the party making such declarations, but are evidence also against all others of the combination, who are made equally responsible for the consequences. This is abundantly clear from the authorities cited by the respectable and learned counsel for the creditor, particularly from the case of *Patton* v. *Freeman, et al.* 1 *Coxe's N. J. Rep.* 13, in which it was decided, that where a combination to perpetrate a fraud was proved, evidence of a conversation with the parties, though all might not have been present during the whole conversation, was good against all. So also, in the case of *Bostwick* v. *Lewis*, 1 *Day*, 33. The declarations of *Peter Reitenbach* ought, therefore, to have been received by the court, and as that was not done, the judgment must, for this reason also, be reversed, and a *venire facias de novo* awarded.

Judgment reversed, and a *venire facias de novo* awarded.