# GRAFTON,

## JULY TERM, A. D. 1857.

---

## HAYWARD *et a. v.* BATH.

Where, on *certiorari*, founded upon a bill of exceptions filed in the Common Pleas, a judgment of that court is ordered to be quashed, if the merits of the cause remain undecided, the whole proceedings are not quashed by the order, but the cause remains for further action in the Common Pleas.

Where exceptions are filed, which relate to the doings of the commissioners on a petition for a highway, and to the judgment of the Court of Common Pleas, accepting their report and establishing the highway, but which do not extend to the regularity and sufficiency of the original petition, if the Supreme Court, on *certiorari* founded upon the bill of exceptions, order the judgment of the Common Pleas to be quashed, the original petition for the highway is not quashed, but remains for further proceedings in the Common Pleas.

PETITION for a highway in Bath and Landaff, filed in the Court of Common Pleas August 19, 1853. The petition having been referred to the road commissioners, they made their report at the September term, 1854, laying out the road. The towns at that term objected to the acceptance of the report on several grounds, and among them for the reason that the commissioners at the hearing before them received incompetent evidence, bearing on the general merits of the cause. The Court of Common Pleas overruled the objections, accepted the report, and rendered judgment, establishing the highway as laid out by the report. The town of Landaff thereupon tendered a bill of exceptions, which was allowed, and on the bill of exceptions applied by petition for a writ of *certiorari*. At the July term, in 1856, this

court awarded the writ, and ordered " that the judgment of the Court of Common Pleas, accepting the said report of the road commissioners, and establishing the said highway, be quashed."

At the October term, in 1856, the original petitioners for the highway moved in the Common Pleas that the petition be brought forward from the docket of September term, 1854, which motion was granted; and thereupon they moved that the petition be referred to the county commissioners, to which Landaff objected.

The names of one hundred and fifty-seven individuals are borne as petitioners on the original petition. Seven of these objected to further proceedings, some of them on the ground that their names were not properly on the petition. The Court of Common Pleas ordered that any number of the petitioners be allowed to proceed, upon filing a bond to indemnify such of the petitioners as objected.

At the same term C. R. Morrison, Esquire, appeared by leave of the court as counsel for the petitioners, to which Landaff objected, for the reason that he had before acted as counsel on the opposite side; and Bath, having come in at the April term, 1856, objected to his acting as counsel for the petitioners, on the same ground.

It appeared that at the October term of the Common Pleas, in 1848, a road had been established over the route in controversy, on the petition of Sargent Moody and others, and that at the April term, in 1849, the court refused to discontinue the road upon petitions of Bath and Landaff, which had been filed pursuant to votes of those towns; that, without any new votes of the towns, other petitions were filed for discontinuance of the road, while indictments were pending against the towns for neglect to build it, and that Judge Morrison was employed as counsel by both towns, in the petitions for discontinuance and in the indictments, and at the August term, 1851, in the petitions for discontinuance. At the October term, 1851, both petitions were dismissed. At the April term, 1852, on other petitions filed after new votes of the towns, the road was discontinued.

Evidence was offered in the Common Pleas tending to show

that Judge Morrison, while employed as counsel for the towns, was conferred with and instructed in regard to the merits of the case, and the changes that would be sufficient cause for a discontinuance. But he disclaimed any recollection of such conference and instructions, and had the impression that he was only conferred with and instructed as to particular questions of law arising on the motions to dismiss the petitions for discontinuance, as to which his services were required in connection with the indictments pending against the towns.

The foregoing facts appeared on a case sent from the Common Pleas.

*Hibbard,* and *H. & G. A. Bingham,* for the towns.

It was not competent for the petition to be brought forward by reason of the quashing of the judgment laying out the road upon *certiorari.* That was equivalent to quashing the whole proceedings. The original petition was discontinued, and no further proceedings can be had thereon. *Hopkinton* v. *Smith,* 15 N. H. 152 ; *Ex parte Weston,* 11 Mass. 417 ; *Whately* v. *County Commissioners,* 1 Met. 336 ; *Newton* v. *County Commissioners,* 9 Pick. 51 ; *Commonwealth* v. *Ellis,* 11 Mass. 465 ; *Huse* v. *Grimes,* 2 N. H. 210 ; *Melvin* v. *Bridge,* 3 Mass. 306 ; *Pratt* v. *Hall,* 4 Mass. 240 ; *Moore* v. *Sandown,* 19 N. H. 93 ; *Com.* v. *Carpenter,* 3 Mass. 268 ; *Com.* v. *Turnpike,* 5 Mass. 420 ; *Com.* v. *Derby,* 13 Mass. 433 ; *Com.* v. *Bridge,* 13 Pick. 195 ; *State* v. *Whitingham,* 7 Vt. 393 ; *Durham* v. *Thompson,* 2 N. H. 166 ; *Royalton* v. *Fox,* 5 Vt. 458.

The proceedings in *certiorari* may be quashed in part and affirmed in part ; but this is believed to be true only in certain cases, where a portion of the proceedings, being quashed, the residue stand, nevertheless, independent and effective of themselves. *Hopkinton* v. *Smith,* 15 N. H. 152 ; *Com.* v. *Turnpike,* 5 Mass. 423.

The jurisdiction of the Court of Common Pleas, in laying out highways, is special, and the orders and judgments, and all the proceedings on a petition for a highway, are under this special

jurisdiction, and are to be regarded on a petition for *certiorari* as in other special jurisdictions. *Morse* v. *Presby*, 5 Foster 299.

The effect of the writ of *certiorari* was to carry up the whole record, and therefore the Court of Common Pleas had nothing to proceed upon. *Wemple* v. *Johnson*, 13 Wend. 515; *Palmer* v. *Forsyth*, 4 B. & C. 401; and though in our practice a transcript or copy only is sent to this court, yet, in legal understanding, the original record is here. *Blake* v. *Hall*, 5 Cowen 37; *Wolfe* v. *Horton*, 3 Caine 36.

Petitioners stand in the light of joint plaintiffs in a personal action. *Burnham* v. *Steele*, 8 N. H. 182. Any of them should have the right to stay the proceedings, or discharge the suit. *Kimball* v. *Wilson*, 3 N. H. 96; *Wilson* v. *Gamble*, 9 N. H. 74.

Mr. Morrison should not be permitted to appear as counsel against the towns in this litigation. He has been of counsel for them in former litigations, with substantially the same parties, involving the same questions upon the merits. He was instructed by his clients as to the merits, and should not be permitted to carry over the knowledge so acquired to the service of the other side. The rule is well established, and is of such character that it should be strictly regarded. It is required, not only for the safety and protection of individual interests, but by professional considerations as well as those of a public nature. As collected from the authorities, it would appear to be the rule that communications between client and attorney are not to be revealed at any period of time, nor in any action or proceeding between other persons; not even in criminal proceedings, nor after the relation of attorney and client has ceased, either by the termination of the business in which the relation accrued, or by the client's ceasing to employ the attorney, and retaining another, or by the death of the client, or by any other course. The privilege is that of the client and not of the attorney, and never ceases unless voluntarily waived by the client. The attorney being an officer of the court, the court will in all cases take measures summarily, if need be, that it be not infringed. 1 Greenl. Ev. 272–279; Phillips' Ev. 131, (6th ed.); 2 Star-

---

---

kie's Ev. 84–230 ; *Bean* v. *Quimby*, 5 N. H. 94 ; *Brown* v.
*Payson*, 6 N. H. 443 ; *Foster* v. *Hall*, 12 Pick. 89 ; *Wilson* v.
*Rastall*, 4 T. R. 753 ; *Rex* v. *Withers*, 2 Camp. 578 ; *Starr* v.
*Vonderheyden*, 9 Johns. 253.

*C. R. Morrison, Felton,* and *Quincy,* for the petitioners.

The whole proceedings were not quashed by the order of this
court in the petition for *certiorari,* as was held in that case. In
England, where the nature of the cause and the constitution of
the inferior tribunal permit it, further proceedings are had after
a writ of *certiorari* has been awarded to quash an order or judg-
ment of the court below. *The King* v. *Ridgeway,* 5 B. &
Adol. 527 ; *The King* v. *Neville,* 2 B. & Adol. 299.

The invalid judgment, and the suspension of the proceedings
by reason of it, did not operate as a discontinuance. The court
have ample power to bring forward any cause that has not been
effectually disposed of, even after the lapse of several terms,
and this power has been often exercised in this State and else-
where. *Haskell* v. *Pickering,* 5 N. H. 19 ; *Com.* v. *Moore,* 3
Pick. 194 ; *Browning.* v. *Bancroft,* 8 Met. 278.

The fact that the court, on *certiorari,* can only quash or affirm,
is of no consequence. The same is frequently true upon writ of
error. In many cases where the court on error reverse the
judgment, they have no power to make a final disposition of the
cause, but it must be taken up by the court which rendered the
erroneous judgment, and such proceedings had in that court as
may be necessary to its determination. *Livingston* v. *Rogers,*
1 Caine 588 ; *Marquand* v. *Well,* 16 Johns. 89 ; *Favor* v.
*Philbrick,* 5 N. H. 477 ; *Shepherd* v. *Com.,* 2 Met. 419 ; *Hill*
v. *Stocking,* 6 Hill 292.

In such cases the cause, it is clear, is not discontinued, not-
withstanding the judgment is entered and the case goes off the
docket, but after the reversal it may be brought forward and a
trial had. The question whether further proceedings can be
had after the judgment has been annulled, must depend on the
nature of the cause and the character of the court. To make

it depend upon the form of the process upon which the judgment was vacated, whether by error or *certiorari*, would be absurd, and must be unjust.

The Court of Common Pleas is a court of record, with regular terms, and its power over its records, and over causes and parties, cannot be made to depend upon the form of proceedings by which its errors are corrected.

In some cases where an error has occurred in the proceedings of an inferior tribunal, and that error is corrected on *certiorari*, the court is so constituted that it cannot take up the cause and proceed with it. The session of the court is incidental to the cause; the session is appointed and fixed for the trial of the cause, and when the session is passed the court has no power to sit again in the cause, as in the case of an erroneous judgment by a justice of the peace. But no such difficulty is met in this case.

Nor is there any valid objection on the ground that the record is removed from the Court of Common Pleas. The record in our practice is not actually removed, but a transcript is sent. There is no more difficulty in this case than where, on error, the judgment is recorded and a new trial had in the court below; or where, on *certiorari*, a part of the proceedings are quashed and the rest remain affirmed. *Hern* v. *Grimes*, 2 N. H. 258; *Melvin* v. *Bridge*, 3 Mass. 306; *Hopkinton* v. *Smith*, 15 N. H. 153.

The case of *White et als.* v. *Landaff*, decided in 35 N. H. 128, settles the point that the objection made by certain persons whose names are on the petition cannot prevail. The petitioners are not joint parties plaintiff, as in ordinary suits; they have no interest in the proceeding more than the public in general. *Toppan's Petition*, 4 Foster 50.

The authorities cited on the question of admitting Mr. Morrison to act as counsel, have no application. He is not called as a witness to disclose confidential communications. It does not appear, and cannot be presumed, that there are any secrets to disclose. The proceeding is in its nature of a public character. It does not appear that Mr. Morrison ever went on the ground;

that he had any information from the defendants which could be used against them, or that they can in any way be prejudiced by his appearing against them.   Besides, the Court of Common Pleas must be left to regulate such matters of practice, and their decision is conclusive.   *Robinson* v. *Mullet,* 4 Rice 354.

PERLEY, C. J.   The order of this court on the petition for *certiorari* did not in terms apply to the original petition, nor any of the proceedings upon it, except the judgment of the Common Pleas, accepting the report and establishing the highway.   It is contended, however, that the legal effect of the order was to quash the whole proceedings, for the reason that this court had no power to vacate the judgment and leave the petition pending for further action in the Court of Common Pleas.   This question occurred to us when that order was made, and we then thought that its effect would be limited to the judgment, and that the petition would remain for further proceedings in the Common Pleas. But the point was not then discussed at the bar, nor very fully considered by the court, and we have regarded it as an open question on the hearing of the present case.   We continue, however, to be of the same opinion.

The *certiorari* in question was founded on a bill of exceptions, presented and allowed in the Common Pleas, and then, by the statute, made part of the record.   The object of the exception and of the *certiorari* was to obtain redress for errors of the Common Pleas in matters of law within the jurisdiction of that court.

No one of the exceptions went on the ground that the court had proceeded irregularly, or had exceeded its jurisdiction; and we held in that case that petitioners for a highway had the right to call on the Supreme Court, by bill of exceptions, to revise and correct the legal decisions of the Common Pleas, though regularly made within the jurisdiction of that court.   The writ of *certiorari* was awarded for error of the court in rendering judgment, accepting the report and establishing the highway, when it appeared by the bill of exceptions that incompetent evidence, bearing directly on the general merits of the cause, was received at the

hearing before the commissioners; and the report, on account of the reception by the commissioners of the incompetent evidence, ought, as matter of law, to have been set aside by the Common Pleas, and the petition recommitted.

The consequences of this error extended no further than to the doings of the commissioners. They did not reach to the prior proceedings and the petition, and therefore the error would be completely rectified and the grievance complained off fully redressed, by quashing the erroneous judgment, and leaving the cause as it stood before the error was committed, to be proceeded with in the Common Pleas.

The *certiorari* was not awarded in that case by virtue of the general authority conferred upon this court to superintend the proceedings of inferior tribunals, and keep them within the limits of their jurisdiction, for the judgment of the Common Pleas was rendered regularly within the jurisdiction of that court; and on a common law *certiorari* the question whether the inferior tribunal has correctly decided a matter of law within its jurisdiction, cannot be entertained.

1 Tidd's Practice 333, 334; *Rex* v. *Inhabitants of Glamorganshire*, 1 Ld. Raymond 580; 1 Barn. & Adol. 382, anon.; *Rex* v. *Morley*, 2 Bur. 1040, s, c; 1 Bl. Rep. 231; *Burwell* v. *Groenvelt*, 1 Ld. Raymond 213; *State* v. *Thompson*, 2 N. H. 237; *Birdsall* v. *Phillips*, 17 Wend. 467; *Pringle* v. *Anderson*, 19 Wend. 393; *Johnson* v. *Moss*, 20 Wend. 145; *Wilson* v. *Green*, 20 Wend. 189; *Simpson* v. *Rhinelander*, 20 Wend. 103; *Ex parte The Mayor of Albany*, 23 Wend. 276; *The Matter Mount Morris Square*, 2 Hill 14; *Ex parte Hagaman*, 2 Hill 415; *Peo.* v. *Goodwin*, 1 Selden 568; *State* v. *Green*, 3 Harrison (N. J.) 179; *Doolittle* v. *Galena & Chicago Railroad Co.*, 14 Ill. 381; *Swann* v. *Mayor, &c., of Cumberland*, 8 Gill. 150.

The statute gives to " any person aggrieved by any opinion, direction or judgment" of the Court of Common Pleas, " in any action or proceeding," the right to a bill of exceptions, and makes no distinction between causes which proceed according to

the course of the common law, and those which proceed otherwise. This court have by statute exclusive jurisdiction to issue writs of error and *certiorari ;* but no provision of any statute prescribes the remedy which an aggrieved party is to pursue, whose bill of exceptions has been filed and allowed in the Common Pleas. The form of his remedy is left to be determined by the nature of his case, according to the rules of the common law. If the proceeding is according to the course of the common law, it has been held that the remedy on a bill of exceptions, which the statute makes part of the record, is by writ of error ; if otherwise, by *certiorari.*

The right to file a bill of exceptions, and have it made part of the record, extends to all actions and proceedings in the Court of Common Pleas, including petitions for highways, as was held in the petition for *certiorari* now in question ; and the party who avails himself of this right may, it would seem, have any matter of law, that has been decided against him in the Common Pleas, revised in this court. It is said in *Moore* v. *Sandown,* 19 N. H. 100, " it is not consistent with the practice in any case, unless some exception may exist which does not occur to us, that upon questions of law involving the rights of parties, the judgment of the Common Pleas should be final."

But this power to revise judgments of the Common Pleas, regularly rendered within the limits of their jurisdiction, is not, as we have seen, exercised by means of a common law *certiorari ;* for a regular judgment of the inferior tribunal, rendered within the limits of its jurisdiction, is not capable of revision, either as to matter of fact or matter of law, on a common law *certiorari.* ·

A *certiorari,* therefore, founded on a bill of exceptions, filed under our statute, to a decision of the Court of Common Pleas, regularly made within the jurisdiction of that court, cannot be regarded as a proper common law *certiorari.* It is founded on the statute, and though not a form of remedy prescribed by the statute, has been adopted in practice as the legal remedy, in a certain class of cases, for the party who has filed his bill of exceptions under the statute. It is in substance a statutory *certio-*

*rari;* and authorities as to the effect of an order in a common law *certiorari* upon the proceedings in the court below, are not applicable to this case, except so far as the two proceedings are of a like character.

The intention of the statute was to give the party aggrieved by an erroneous order, opinion, or judgment of the Common Pleas, in matter of law, the means of redress by an application to the Supreme Court, founded on his bill of exceptions; and though the nature of the proceeding might in some cases require the form of the remedy to be by writ of error, and in others by *certiorari*, there is nothing which can lead us to suppose that the same substantial measure of redress was not intended to be given in both classes of cases.

It not unfrequently happens, when a judgment is rendered by writ of error founded on a bill of exceptions, that the merits of the cause are left undecided; as, for instance, when the error is assigned in admitting or rejecting evidence on trial by the jury. The judgment is vacated, and the issue joined in the Common Pleas remains untried. In such case, further proceedings are necessary to determine the controversy between the parties; and a new trial is had, usually in the court of errors, provided that court has jurisdiction of the cause; otherwise, in the court below. By this course complete justice is done to the plaintiff in error, the erroneous judgment of which he complained is vacated, and the cause proceeds as if it had never been rendered; and the effect of recovering the judgment is not extended beyond a full correction of the error committed by the court below.

But if, because the nature of the suit requires the application to the Supreme Court, on a bill of exceptions, to be in the form of a petition for the writ of *certiorari*, the whole proceedings must be quashed for some incidental error, not going to the foundation of the cause, and the court have no power to leave the merits to be determined by further proceedings in the court below, it is quite plain that the redress in such case is widely different in substance from that which the plaintiff obtains by writ of error founded on a bill of exceptions filed under the same pro-

vision of the statute; and is, also, out of proportion to the griev-
ance complained of. For if the error was in favor of the party
prosecuting the suit, as in the present case, though the mistake
might be merely incidental, and the order on *certiorari* leaves the
merits of the cause wholly undecided, yet the prosecuting party
must lose the benefit of all the antecedent proceedings, though
entirely correct and regular, and be put to the unnecessary trou-
ble and expense of commencing anew. On the other hand, if
the prosecutor of the suit filed the bill of exceptions, it would be
a poor redress to obtain the correction of an error committed
against him, if the correction of the error necessarily required
that the proceedings which he had instituted should all be quashed.
It would give him no relief, except perhaps against a judgment
for costs. We cannot think that this was the kind and measure
of redress which the statute intended to provide for the aggrieved
party on his bill of exceptions, whether the nature of his cause
might require him to pursue this statutory remedy by *certiorari*
or by writ of error.

In a case like the present, where the error complained of does
not extend to the original proceeding, as the merits of the cause
have not been decided, we ought, on grounds of convenience and
expediency, to hold that further proceedings may be tried, unless
we find ourselves concluded by authority, or see in the way some
serious, practical difficulty, growing out of the nature of the cause
or the constitution of the court below.

I am not aware that this point has been decided in this State.
The general rule that on *certiorari* the court must quash or affirm
the proceedings, is stated in *Hopkinton* v. *Smith*, 15 N. H. 153,
and it is also said in that case that it was not perceived how the
Court of Common Pleas could make an order for recommitting
the petition after the proceedings were quashed. But the pres-
ent question was not distinctly raised on that case, as the pro-
ceedings were not quashed, but affirmed, and that petition for
*certiorari* does not appear to have been founded on a bill of ex-
ceptions filed and allowed under the statute. At the most, the
remarks of the court can be considered as no more than a *dictum*.

In the report of *Moore* v. *Sandown*, 19 N. H. 93, the result of the judgment is stated to be that " the proceedings in relation to the discontinuance of the road must be quashed." In that case an examination of the record has been made, which shows that the proceedings in the Common Pleas, except the judgment, were not in fact quashed; but at the September term, 1848, the judgment rendered February term, 1846, was vacated, and the petition recommitted; and at the February term, 1849, the commissioners made a second report against the discontinuance, which was accepted at the same term, and at September term, 1849, a judgment was rendered for costs against Sandown. In the *Petition of Osgood et a.*, for a highway in Concord and Pembroke, a report of the committee was accepted in the Common Pleas, March term, 1839. On *certiorari* the Superior Court were of opinion that the judgment should be set aside, and the Court of Common Pleas, March term, 1840, ordered that the judgment should be set aside accordingly, and the petition be brought forward to that term, when the petition was again referred and *confirmed*. In this case of *Osgood et a.* v. *Concord and Pembroke*, no order appears on the records of the Superior Court for quashing the judgment of the Common Pleas; but the judgment was set aside in the Common Pleas, pursuant to the opinion of the Superior Court, on the petition for *certiorari*.

I have not met with any case in which the whole proceedings in a petition for a highway have been quashed by *certiorari* founded on a bill of exceptions filed in the Common Pleas, where the error of the court below consisted in some order or direction which did not go to the foundation of the cause; but the merits were left undecided. On the contrary, so far as I can find that any practice exists on the subject, the cause in such cases has proceeded in the Common Pleas after so much of the proceedings had been vacated as were affected by the error.

As a general rule, when the writ of *certiorari* at common law is awarded, and the record is brought up, the whole proceedings are quashed; whereas, when a judgment is reversed on error, if the cause is left undecided, and the court above has not juris

Hayward v. Bath.

diction to determine it, it remains in the court below, and proceeds there as if the erroneous judgment had not been rendered. *Pinto* v. *Atwater*, 1 Day 205; *Keen* v. *Turner*, 13 Mass. 265; *Livingstone* v. *Rogers*, 1 Caine 588; *Hartshorne* v. *Sleght*, 3 Johns. 554, 555; *Arnold* v. *Crane*, 8 Johns. 79; *Winchester* v. *Hinsdale*, 12 Conn. 88; *How* v. *Merrill*, 5 Greenl. 318; *Com. of Montgomery County* v. *Carey*, 1 Ohio State Rep. 463.

What are the reasons for this difference in the effect of reversing a judgment in error, and quashing an order or judgment on *certiorari?* In England, the writ of *certiorari* is not awarded to quash judgments of the superior courts. Their proceedings are according to the course of the common law, and their erroneous judgments are corrected by writ of error. The writ of *certiorari* after judgment is awarded there for the supervision of inferior tribunals, which for the most part proceed by summary methods, and have no regular terms or continuances, but only occasional sessions appointed for the particular cause, as in the case of coroners' inquisitions, summary convictions by magistrates, orders for removal of paupers, orders of the poor law commissioners, the commissioners of sewers, and the commissioners of tithes, orders of town councils, &c. When such tribunals have made their order or judgment, purporting to dispose of the cause, their powers are exhausted. No court comes again at a stated term to take up the cause and proceed with it, after an erroneous order or judgment has been set aside on *certiorari*. There is, therefore, in such cases a practical difficulty, which has been regarded as insurmountable, in the way of setting aside a judgment or order, and leaving the cause for further proceedings.

But if the court below, as in the case of the general quarter sessions, have regular terms and continuances, this reason for quashing the whole proceedings on *certiorari* does not exist, and where further action in that court is necessary to determine the merits, so much only of the proceedings may be quashed as are erroneous, and the cause remitted to the court below, to enter up continuances and proceed to decide the merits, as was done in *The King* v. *Ridgeway*, 5 B. & Ald. 527. That was a prose-

cution commenced before two magistrates on the statute against illegal combinations of workmen. The defendant was convicted before the magistrates, and appealed to the quarter sessions, who quashed the conviction. On *certiorari*, the court of king's bench quashed the order of the sessions, and remitted the cause to that court, to enter up continuances and hear the appeal. *Abbot*, C. J., says: " I am of opinion that in this case the order of sessions is wrong, and must be quashed; and that being so, we find that the original conviction has been quashed by the sessions for informality. It is then our duty to examine, and if we cannot see any informality in it, to quash the order of sessions. But in doing so we ought not to deprive the party of his appeal on the merits, and therefore we shall, after quashing the order of the sessions, send the case back to them, to enter continuances and hear the appeal." *The King* v. *Neville*, 2 B. & Ald. 299, is to the same point. In that case *Littledale*, J., is reported to have said: " It is a technical rule, undoubtedly, that if a record, removed by *certiorari*, be once filed in this court, it shall not be sent back; but that rule is not inflexible."

It would thus seem that in England, where an erroneous order of the court below is quashed on *certiorari*, and the merits of the cause are left undecided, if the constitution of the court below interposes no practical difficulty, the effect of awarding the writ is limited to the erroneous order, and the cause is remitted, with instructions to proceed. And the rule, requiring the whole proceedings to be quashed, is applied only in cases where the court below has no power to take up the cause after the erroneous order has been vacated, and proceed to determine the merits.

The reason for the difference which prevails in ordinary cases between the effect of reversing a judgment on error, and awarding a writ of *certiorari*, when the merits of the cause are left undecided, is this: The writ of error is directed to a court proceeding according to the course of the common law, with regular terms and continuances; and in that case there is no difficulty in taking up the unfinished cause and proceeding with it; whereas the writ of *certiorari* is used to superintend the proceedings of

tribunals which for the most part have no such terms and contrivances, and are by their constitution incapable of resuming the cause after the writ of *certiorari* has been awarded. We have seen that where this reason for that distinction between the remedy by writ of error and by *certiorari* fails, the distinction is not recognized in practice.

It is quite plain, in case of a petition for a highway pending in the Court of Common Pleas, that there is no such ground for requiring that the whole proceedings should be quashed on *certiorari*, when the error does not go to the foundation of the cause. The proceeding on petition for a highway is not indeed according to the course of the common law ; it is not commenced by writ ; there is no declaration ; usually no plea or issue, and no trial by jury ; and it is held that the form of the remedy for revising the proceeding is by *certiorari*, and not by writ of error. But it is a cause regularly entered in the same court to which the writ of error is directed ; it stands on the records and dockets of the courts, and is continued from one regular term to another, like a suit at common law ; and there can be no more difficulty in entering up continuances, if that form should be thought necessary, and bringing it forward after the *certiorari* has been awarded, than in doing the same thing after a judgment has been reversed on error. The Supreme Court have no jurisdiction to determine the merits of the cause, nor have they on writ of error in any of the numerous cases where the Common Pleas have exclusive jurisdiction of suits at law.

In our practice the original record is not removed from the court below, either by writ of error or of *certiorari ;* a transcript is sent up with the cases. *Rochester* v. *Roberts*, 5 Foster 495. And the technical objection, that in legal understanding the record is removed to the court above, and nothing is left below to proceed upon, applies equally to both cases, and can prevail in neither. In *Dyer* v. *Lovell*, 33 Maine 260, this objection appears to have been looked upon as too trifling for serious consideration. In some jurisdictions, where the cause is removed before judgment by *certiorari* for further proceedings in the

court above, objection has been made that the original record remained below, and a transcript only was in fact sent up ; and to avoid this technical objection the courts have held that, though in fact a copy only was in the court above, yet in contemplation of law it was to be regarded as the original record. *Wolfe* v. *Horton,* 3 Caine 86. In the present case we are asked to admit the fiction that the record is in the court above, when in fact it remains below, not to avoid but to raise a technical difficulty. Records with us are bound together, and entered continuously in large books, and cannot be separated and removed into other courts, as a roll may be removed from the file.

In Vermont the writ of *certiorari* is used, it would seem, as with us, to bring the proceedings on a petition for a highway before the Superior Court, and the object is there mainly " to answer the objects and ends which are intended to be reached by a writ of error where that writ lies ; that is, to raise the proceedings of the inferior tribunal in matters of law." *Paine* v. *Leicester,* 22 Vt., 98. And in *Sumner* v. *Hartland,* 25 Vt. 642, it is said by *Redfield,* C. J., " We never retain any of these sessions matters in this court, but either quash them altogether, or, after reversing some erroneous judgment, remand them for further proceedings." We infer that the practice in Vermont, on quashing an order in a road case, is to remand the cause for further proceedings, if further proceedings are necessary to determine the merits.

There is certainly no more practical difficulty in proceeding with a petition for a highway, after a judgment has been vacated in *certiorari,* than with a suit at law after judgment has been reversed on error. We are not encountered with the difficulty which is met in ordinary cases of a common law *certiorari ;* and as the reason for holding that the whole proceedings must be quashed does not exist here, we think the rule should not be applied.

Our decision of this point has gone somewhat upon the ground that this was a *certiorari* founded upon a bill of exceptions filed under the statute. We do not wish, however, to have it inferred

that in all other cases the whole proceedings must necessarily be quashed when the writ of *certiorari* is awarded; that is a point which we have not undertaken to decide.

The objection that certain names are improperly on the petition, cannot prevail, especially as security was offered to those of the petitioners who objected to further proceedings. If it appeared that the proceeding originated in a fraud as to those whose names are borne on the petition, we do not mean to decide that, provided the objection were seasonably made, the petition would be allowed to proceed; but no such case is before us. We understand that an objection like this was overruled in *White* v. *Landaff*, 35 N. H. 128.

It does not appear that Judge Morrison had possession of any information, confidentially communicated, which could be used to the disadvantage of his former clients, and there can be no presumption from the nature of the cause that he was possessed of such information; his own statement shows that he was not. Perhaps this court has power, on a proper application, to restrain a councillor or an attorney from acting in other courts against his former clients, when a case shall be presented which calls for such interference. *Cholmondely* v. *Clinton*, 19 Vesey 260. But this does not appear to be such a case. *Robinson* v. *Mullet*, 4 Price 354.